ST. GABRIEL PARISH CREDIT UNION *v.*
BARNETT PONTIAC, INCORPORATED

1. LIENS—AUTOMOBILE DEALERS—OWNERS—DUTY TO NOTIFY SECRE-
TARY OF STATE.
As the law existed in 1963, only owners had a duty to notify
the secretary of state of liens imposed upon motor vehicles
they were purchasing and no similar duty was imposed upon
the automobile dealer until January 1, 1965, as to vehicles
they sold (CLS 1961, § 257.217; PA 1964, No 248, § 1).

2. CUSTOMS AND USAGES—DUTY—CERTAINTY.
Custom and usage can create a duty if it is certain, definite,
uniform, and notorious, but where the only evidence presented
encompasses events and usages from 1964 to 1967, the custom
and usage of 1963 is not established.

3. CONTRACTS—THIRD-PARTY BENEFICIARY—BURDENS OF CONTRACT—
AUTOMOBILE DEALER.
An automobile dealer is only an incidental beneficiary, not a
third-party creditor beneficiary of a contract between a credit
union and a person to whom it loans money to purchase an
automobile from the dealer, where the loan contract was not
intended to benefit the dealer, where the purchaser received
cash and promised to repay the loan plus interest and where
neither the promissory note nor the chattel mortgage makes
any reference to the automobile dealer.

4. LIENS — AUTOMOBILE DEALER — DUTY TO NOTIFY SECRETARY OF
STATE.
Incomplete precatory language on the reverse side of a draft
issued by credit union as loan for purchase of automobile
to the effect that an automobile dealer should notify the secre-

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 30, 31, 46.
[2] 21 Am Jur 2d, Customs and Usages §§ 7, 11, 21.
[3] 17 Am Jur 2d, Contracts §§ 302-307.

(1)

tary of state of credit union's lien *held* contractually insufficient to impose a duty to file notice of the lien despite indorsement of the draft by the automobile dealer.

Appeal from Common Pleas Court of Detroit, Henry J. Szymanski, J. Submitted Division 1 November 15, 1968, at Detroit. (Docket No. 3,823.) Decided February 24, 1969.

Action by St. Gabriel Parish Credit Union, a Michigan corporation, against Barnett Pontiac, Incorporated, a foreign corporation, and Joann M. Pagogna for money due on an automobile purchased by Joann M. Pagogna with funds borrowed from plaintiff. Default judgment against Joann Pagogna and judgment against Barnett Pontiac. Barnett Pontiac appeals. Reversed and remanded.

*Kelly, Tatham & Solner* (*Michael D. Scallen,* of counsel), for plaintiff.

*Meyer Stein* (*Patrick J. Keating,* of counsel), for defendant.

BEFORE: Lesinski, C. J., and J. H. Gillis and Beer,* JJ.

J. H. Gillis, J. This action concerns defendant Joann M. Pagogna's purchase on June 18, 1963 of a 1963 Pontiac from defendant Barnett Pontiac, Inc. To facilitate her purchase, defendant Pagogna borrowed $2,900 from plaintiff, St. Gabriel Parish Credit Union, signed a promissory note in favor of the credit union and executed a chattel mortgage upon the automobile.

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

Plaintiff did not notice file the mortgage. However, plaintiff, in paying Pagogna the money borrowed, did draw a draft payable to both defendants, the reverse side of which provided:

"Please instruct the Secretary of State in Lansing to place the first lien by chattel mortgage on title in the amount of ...... in favor of ... ..... ."

Plaintiff did not explain its failure to notify the secretary of state of the lien, nor did it further instruct Barnett Pontiac.

Barnett Pontiac, when completing the title application for the automobile did not record plaintiff's lien but instead placed the word "none" in the blank designated "amount of lien." As a result, Pagogna received a title certificate which omitted reference to plaintiff's lien.

After making a number of payments to plaintiff, Joann Pagogna defaulted. Without notice to plaintiff, she then sold the automobile to a bona fide purchaser and retained the proceeds.

Plaintiff initiated suit against both defendants. A default judgment was entered against defendant Pagogna. As to defendant dealer, a trial was held, the judge sitting without a jury. Barnett Pontiac was held jointly and severally liable for plaintiff's loss, the court finding that defendant dealer had notice of plaintiff's lien and had a duty to notify the Michigan secretary of state of its existence. Barnett Pontiac appeals.

The sole relevant issue on appeal is whether defendant dealer had a legal duty to notice plaintiff's lien on the title application sent to the Michigan secretary of state.

Plaintiff credit union offers 3 theories upon which the dealer's duty might be predicated. First, the plaintiff claims the dealer was required by statute

to note the lien on the application for title. The statute, CLS 1961, § 257.217 (Stat Ann 1960 Rev § 9.1917), as it existed in 1963, provided as follows:

"(a) Every *owner* of a vehicle subject to registration hereunder shall make application to the department for the registration thereof and issuance of a certificate of title * * * and said application shall contain * * * a statement of the applicant's title and of all liens or encumbrances upon said vehicle and the names and addresses of all persons having any interest therein and the nature of every such interest * * *.

"(b) Every *dealer* selling or exchanging vehicles subject to registration shall before delivering any vehicle to the purchaser make application to the secretary of state for new title * * *. The purchasers of such vehicles shall sign the applications * * *." (Emphasis supplied.)

Analysis of the 1963 statute clearly indicates that the duty to notify as to liens was imposed only upon owners. If the legislature had intended to impose a similar duty upon dealers, express provision therefor would have been afforded in subsection (b) of the statute. In face of failure to so provide, the 1963 statute cannot be said to impose a duty to notify as to liens. Such a duty was imposed upon dealers subsequent to this cause, when a new subsection (d) was added to the statute.[1]

The case of *Securities Acceptance Corporation* v. *Perkins* (1957), 182 Kan 169 (318 P2d 1058), cited by plaintiff, is not in disagreement. There the dealer

---

[1] Subsection (d) now provides:
"If the dealer has received written notice on a form prescribed by the secretary of state that the purchaser has created or is creating a security interest in the vehicle or in any accessory thereon, the dealer and the purchaser shall include a statement of the name and the address of the holder of each such security interest in the application." PA 1968, No 66 (Stat Ann 1969 Cum Supp § 9.1917).

was held liable for failure to show all liens when it filled out the bill of sale for an automobile. However, in *Securities Acceptance Corporation* v. *Perkins, supra,* the statute expressly required dealers to note liens on bills of sale, while in the instant case the statute has expressed no such duty. Therefore, Barnett Pontiac has violated no statutory duty.

Plaintiff also contends that custom and usage of the trade placed a common-law duty on the defendant dealer to notice the lien on the application. Usage and custom can create a duty. However, a practice is not binding as a usage or custom unless it is certain, definite, uniform and notorious. *Pennell* v. *Delta Transportation Company* (1892), 94 Mich 247. In the instant case the record is devoid of any evidence of the existence in 1963 of a definite, certain, uniform or notorious practice. Indeed, plaintiff's evidence only encompassed events and usage from 1964 to 1967, the period during which subsection (d) of the statute requiring dealers to give notice was enacted and became effective.[2]

Plaintiff's third theory of liability suggests that the dealer's duty arose because the dealer was a third-party creditor beneficiary of the contract between plaintiff and Pagogna. Plaintiff contends that Pagogna gave consideration to plaintiff for plaintiff's promise to pay defendant dealer. Further, plaintiff alleges that the dealer's acceptance of the benefits of this contract necessarily required acceptance of its burdens, including the burden of giving notice of plaintiff's lien.

Plaintiff's theory, however, lacks merit. The loan contract was not intended to be for the direct benefit of defendant Barnett Pontiac. Plaintiff loaned

---

[2] The act adding the new subsection is PA 1964, No 248, § 1, and was effective January 1, 1965.

Pagogna cash and in return received Pagogna's promise to repay the loan plus interest. Neither the promissory note nor the chattel mortgage made any reference to Barnett Pontiac. The draft was presented to Pagogna and required her indorsement. Therefore, Barnett Pontiac was only an incidental beneficiary of the loan agreement. See *Greenlees* v. *Owen Ames Kimball Company* (1954), 340 Mich 670 (46 ALR2d 1205). Similarly the contract between Pagogna and Barnett Pontiac, Inc. for purchase of the automobile for cash was a completely separate agreement and not part of a third-party beneficiary contract.

Since no third-party beneficiary contract existed, Barnett Pontiac cannot be said to have assumed a duty by mere acceptance of the draft. The incomplete precatory language on the reverse side of the draft was contractually insufficient to impose a duty to file notice of the lien despite indorsement of the draft by Barnett Pontiac.[3]

As plaintiff has been unable to establish a theory upon which a duty might arise, Barnett Pontiac cannot be held liable for failure to notify the secretary of state of the existence of plaintiff's lien.

Reversed and remanded for entry of a judgment of no cause of action in favor of defendant dealer. Costs to appellant. All concurred.

---

[3] Contrast the language requiring acceptance of conditions found in *Detroit Newspaper Industrial Credit Union* v. *McDonald* (1967), 9 Mich App 146.